UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ISAAC S. HOWARD, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-06-0400 |
| § | |
| LINDA S. McMAHON, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability benefits are Plaintiff's and Defendant's cross-motions for summary judgment. After considering the parties' filings and the applicable law, the Court finds that both motions should be **DENIED**.

## I. BACKGROUND

Plaintiff Isaac S. Howard was born September 22, 1952. He is a high-school graduate who served in the Army. He also has past relevant work as a truck driver and machine operator.

On November 4, 2003, Mr. Howard filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits, alleging an onset date of disability of December 15, 2002. He claimed that his disability arose as a result of high blood pressure, chronic back pain, and depression. His applications for benefits were denied on February 24, 2004, and a Request for Reconsideration was denied on June 14, 2004.

Mr. Howard then filed a Request for Hearing, and an administrative hearing was held on March 17, 2005. The Administrative Law Judge (ALJ) who presided over the hearing concluded that Mr. Howard suffered from hypertension, diabetes, gastro-esophogeal reflux disease, Hepatitis C, degenerative disc disease, and depression—all of which constituted "severe"

medical impairments. However, Dr. Robert Borda, a licensed psychologist who testified at the hearing as a medical expert (ME), opined that none of these impairments rose to the level necessary to qualify under Social Security's Listing of Impairments. Yet the ALJ acknowledged that Mr. Howard's medical impairments would restrict his ability to work in the following ways: he could lift or carry no more than twenty pounds occasionally and ten pounds frequently; he could stand or walk for only six hours out of an eight-hour workday; he must sit at least two hours in an eight-hour workday with the ability to alternate sitting and standing at will; he must have limited contact with the public; and he could perform only low stress, unskilled tasks.

Based on these limitations, the ALJ concluded that Mr. Howard could no longer perform his past relevant work of truck driver or machine operator. However, the vocational expert (VE) who testified at the administrative hearing, Mr. Herman Litt, concluded that a hypothetical person with Mr. Howard's impairments could perform the unskilled jobs of a small products assembler, an electronics worker, and a food production worker. Based on Mr. Litt's opinion that Mr. Howard could perform some work in the national economy, the ALJ found at step five of the sequential evaluation process that Mr. Howard was not disabled.

Following the ALJ's decision to deny disability benefits on July 5, 2005, Mr. Howard filed a Request for Review with the Appeals Council, which was denied on November 29, 2005. This civil appeal followed.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

### B. Standard of Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C. Legal Standard

A disability claimant bears the initial burden of proving that he is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Court evaluates a disability claim via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

If a claimant can satisfy the first four prongs of the test, the burden then shifts to the Commissioner to establish that the claimant is capable of performing "substantial gainful activity" and therefore is not disabled. *Id.* To do so, the Commissioner must produce "'expert vocational testimony or other similar evidence' that jobs exist[,] in the national economy[,] that the applicant can perform." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (quoting *Ghorman v. Heckler*, No. 85-3444, slip op. at 9-10 (5th Cir. 1986), 782 F.2d 1038 (table)).

### D. Howard's Claim

Mr. Howard challenges the ALJ's decision as not supported by substantial evidence. He argues that the ALJ did not address two opinions of the ME in his opinion, and that the ALJ's hypothetical question to the vocational expert did not include all the restrictions of record.

In particular, the first opinion was elicited when the ME was asked by Mr. Howard's counsel about his ability to be reliable for work on a sustained basis. The ME responded, "I think reliability would be one of those other issues that would come up in that also probably would be moderate[1] to marked.[2] Some days he just wouldn't show up" (R. 383). Second, the ME was asked by Mr. Howard's counsel about his ability to sustain concentration, persistence, and pace over the course of a forty-hour work week. The ME answered, "[H]is ability to maintain concentration, persistence and pace over a 40-hour workweek I think because of the distraction from the pain, the irritability it would be probably marked" (R. 384). Mr. Howard argues that the ALJ improperly failed to address this testimony in his decision.

In addition, Mr. Howard argues that the ALJ did not properly consider testimony from the vocational expert. Mr. Howard's attorney questioned the VE about Mr. Howard's ability to work with the mental limitations identified by the ME. The VE responded that if Mr. Howard suffered from "the more extreme of [his] bad days" one day a week or more, he "would not be able to maintain employment under those circumstances" (R. 387-88). Mr. Howard complains that this restriction, along with the other specific mental limitations identified by the ME, were not included in the ALJ's hypothetical question to the VE.

Mr. Howard does not object to the ALJ's failure to refer specifically to other testimony that was adduced at the hearing. The testimony from Mr. Howard's sister was, however, strongly corroborative of the view that Mr. Howard had "bad days" that would make regular employment difficult. She referred to Mr. Howard's having worked for ten or eleven years as a machinist for the same employer, but his having then got in a fight which apparently led to Mr. Howard's departure. R.374. Mr. Howard then worked as a truck driver, but could not maintain

---

[1] A "moderate" limitation is some limitation, but the individual is still able to function satisfactorily (R. 21).
[2] A "marked" limitation is when the ability to function in an area is severely limited, but not precluded (R. 21).

that job, evidently because of interpersonal difficulties ("nobody couldn't say nothing to him . . . Everybody was against him.") *Id.* Mr. Howard's sister recounted that Mr. Howard's wife left him after she awoke one night to find him standing over her with a knife. *Id.* Mr. Howard subsequently knocked out a tooth from the mouth of his girlfriend. *Id.* Mr. Howard's sister also testified that "when people are around he thinks people talking about him constantly." R.376.

The ALJ did recite in his decision a number of other mental limitations identified by the ME. The decision recounts the ME's testimony that limitations on Mr. Howard's ability to understand, remember, and carry out short, simple instructions would be slight;[3] limitations on his ability to make judgments on simple, work-related decisions would be slight; limitations on his ability to interact appropriately with the public would be marked; limitations on his ability to interact appropriately with supervisors and coworkers would be moderate to marked; and limitations on his ability to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting would be moderate to marked (R. 21). Despite this lengthy list of limitations, however, the ALJ's findings regarding Mr. Howard's mental state were simply that he must be restricted to "limited public contact and low stress unskilled tasks due to depression" (Tr. 21).

The Court is reluctant to remand any case in which the ALJ clearly devoted as much time, and to which he brought as much experience, as this one. The Court also acknowledges the ALJ's distinct advantage over the Court in being able to judge the credibility of the witnesses. Nonetheless, the testimony from the ALJ's own vocational expert, substantiated by that of Mr.

---

[3] A "slight" limitation is a mild limitation in the area, but the individual can generally function well (R. 21).

Howard and his sister, raise serious concerns as to whether Mr. Howard can – as a regular employee – function safely and effectively among others. The case is **REMANDED** for that analysis.

## III. CONCLUSION

**IT IS SO ORDERED.**

**SIGNED** this 26th day of March, 2007.

                                                  KEITH P. ELLISON
                                                UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT